**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CAROL BELL,** | ) | **CASE NO.1:07CV3224** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **CITY OF CLEVELAND, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Richard Delvecchio's Motion for Summary Judgment based, in part, on qualified immunity (ECF #21). For the following reasons, the Court denies Defendant's Motion.

According to the claims in Plaintiff's Complaint, Plaintiff's decedent was killed by a Cleveland police officer on October 21, 2006, without justification. Plaintiff's Complaint, brought under 42 U.S.C. §1983 and Ohio state law, alleges the following claims: deprivation of Plaintiff's decedent's Fourth and Fourteenth Amendments rights under the United States Constitution; governmental liability for failure to train and supervise and inadequate policies and procedures; wrongful death under Ohio law; survivorship action for pain and suffering; willful,

1

wanton and reckless conduct of police officer; assault and battery; and spoliation of evidence.

Richard A. Delvecchio, a Cleveland police officer, has moved for summary judgment, in part, on the basis of qualified immunity, contending that he shot decedent in self defense. The Court permitted limited discovery on whether Plaintiff's decedent was armed at the time of the shooting and any witness testimony to the shooting itself. The parties have fully briefed the issue and it is ripe for ruling.

## **FACTS**

Plaintiff's Complaint alleges decedent Henry Bell ("Bell") was a passenger in a vehicle with a cracked windshield. Cleveland police officers on patrol noticed the cracked windshield and put on their overhead lights and pulled over the vehicle containing Bell. The driver of the vehicle panicked and fled the scene in the car. The car stopped on the property of the Cuyahoga Metropolitan Housing Authority ("CMHA") and the occupants of the vehicle, including Bell, fled on foot. Officers gave chase and when Bell turned to face the officers, he was shot and killed by Officer Delvecchio.

According to Officer Delvecchio's affidavit, he was not in the police car that originally gave chase to the car in which Bell was a passenger instead, Delvecchio responded to a call for assistance made by another officer in pursuit of the car containing Bell. After chasing Bell on foot and repeatedly shouting for him to stop, Delvecchio states Bell eventually stopped with his back to Delvecchio and reached into his pants. Delvecchio contends he repeatedly shouted at Bell to show him his hands, which Bell ignored. As Bell turned to face Officer Delvecchio, Delvecchio saw a gun in Bell's hand and shot him twice.

The parties dispute whether the decedent pointed a gun at Officer Delvecchio when

decedent turned to face the officers pursuing him.  According to Plaintiff's Complaint, "independent eyewitnesses dispute the concocted claims of the Cleveland Police and Delvecchio that Henry was pointing a gun at Delvecchio when Delvecchio shot and killed Henry." (Complaint ¶ 9).  Plaintiff cites to the affidavits of two minors who allegedly witnessed the shooting.  According to affiant M.S. "I heard police say 'stop or I'll shoot' to Henry.  Henry ran a bit more, started to turnaround with his empty palms up in the air.  It was at this exact time I heard and saw Henry being shot twice by the same policeman that was chasing Henry."  Affiant J.W. testified, "I saw Henry get out of a car and start running toward the building where he got shot.  As Henry was running around the building trying to escape from the police he stopped running and turned around and started raising his hands in to the air.  There was nothing in either hand.  There was no gun."

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the

lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).  Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Circ. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

**Qualified Immunity**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) "Qualified immunity 'is an affirmative defense that must be pleaded by a defendant official.'"  *Harlow*, 457 U.S. 800, 815 (1982).  But qualified immunity "is an

4

immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Immunity ordinarily should be decided by the court long before trial." *Hunter* at 228 (1991) (citing *Mitchell* at 527-29). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell* at 526 (citing *Harlow* at 818). The issue of qualified immunity must be addressed at the earliest possible point in the litigation. *Saucier v. Katz,* 533 U.S. 194, 200-201 (2001); *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). The Supreme Court has stated that, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed. " *Harlow* 457 U.S. at 819. A district court should resolve immunity question before permitting discovery; *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998) Indeed, one of the core purposes of the immunity is to shield officials from "the burdens of broad-reaching discovery." *Crawford-El,* 523 U.S. at 588 (quoting *Harlow*, 457 U.S. at 817-818).

The analysis of a qualified immunity claim is distinct from the merits of the underlying claim itself. *Saucier,* 533 U.S. at 204; *Dunigan v. Noble,* 390 F.3d 486, 491 n.5 (6th Cir. 2004). Qualified immunity is a purely legal question which must be determined early in the proceedings. *Saucier,* 533 U.S. at 200; *Siegert,* 500 U.S. at 232.

The defendants bear the initial burden of coming forward with facts which suggest that they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. *Untalan v. City of Lorain,* 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City,* 336 F.3d 487, 490-

491 (6th Cir. 2003).

## ANALYSIS

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements**.**  First, he must demonstrate that he was deprived of a right secured by the Constitution or the laws of the United States, and secondly he must demonstrate that the deprivation was caused by a person acting under color of state law.  *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).  In her Complaint, Plaintiff alleges Officer Delvecchio deprived Plaintiff's decedent of his right to be free from unreasonable seizures by the use of force, in violation of the Fourth and Fourteenth Amendments of the Constitution. There is no dispute that Officer Delvecchio was acting under color of state law as a Cleveland police officer when the shooting occurred.  Thus, the inquiry is whether Officer Delvecchio deprived Bell of a federally protected right.  If the Court finds a violation, the Court must then address the issue of Officer Delvecchio's defense of qualified immunity.

The Fourth Amendment provides a police officer may not seize an unarmed, non-dangerous suspect by killing him, and the Supreme Court has held that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). In cases where a seizure involves the use of deadly force, the intrusiveness is "unmatched and irrevocable."  *Id*.

In the case at bar, we have two differing versions of the events leading up to the shooting.  In this case, whether Bell had a gun in his hands and was pointing it at Officer Delvecchio when he was shot are controlling issues, and the parties' differing versions of the events creates genuine issues of material fact.  These are factual questions for a jury to decide.

It is impossible for the Court to determine whether Officer Delvecchio deprived Bell of a federally protected right to be free from unlawful seizure by the use of excessive force without first making a determination as to whether Officer Delvecchio's conduct was reasonable. "The use of deadly force is reasonable if an officer believes that there is a threat of serious physical harm to the officer or others."*Brandenburg v. Cureton,* 882 F.2d 211, 215 (6th Cir.1989) ( *citing Young v. City of Killeen, Tex.,* 775 F.2d 1349, 1353 (5th Cir.1985). If a jury were to find Bell posed a threat of serious physical harm to Officer Delvecchio or others, it may find Officer Delvecchio's shooting of Bell reasonable. If, on the other hand, a jury were to find Bell did not have a gun in his hand but rather had his empty hands raised at the time he was shot, then the jury could conclude Officer Delvecchio's shooting of Bell was not reasonable. Because this issue of fact predominates the reasonableness inquiry summary judgment is not appropriate.

**Qualified Immunity**

The relevant inquiry in determining whether qualified immunity is available focuses on whether a reasonable official in the defendant's position would have believed his conduct to be lawful in light of clearly established law. *Saucier v. Katz*, 533 U.S. 194, 194 (2001). According to the Supreme Court, the threshold question in a qualified immunity inquiry is whether the facts alleged show the officer's conduct violated a constitutional right, when viewed in the light most favorable to the party asserting the injury. *Id*. at 201. If no constitutional right would have been violated, there is no need to further inquire with regard to qualified immunity. *Id*. If, on the other hand, a violation could be established, the next step is to ask whether the right was a clearly established right of which a reasonable person would have known. *Id*. There is no dispute that United States Supreme Court precedent clearly held at the time of the shooting that

the use of force is unconstitutional if it is excessive under objective standards of reasonableness. *Graham v. Connor,* 490 U.S. 386, 394-95 (1989). See also *Monday v. Oullette,* 118 F.3d 1099, 1104 (6th Cir.1997) (citing *Adams v. Metiva,* 31 F.3d 375, 384-85 (6th Cir.1994)).

In this case, the Court is unable to grant qualified immunity as to Officer Delvecchio because it is not clear whether his conduct violated a constitutional right. Whether or not his conduct passes constitutional muster hinges primarily on whether Bell posed a serious threat at the time of the shooting; a fact that remains in dispute. A jury must, therefore, make a factual determination before the Court decides to afford Officer Delvecchio qualified immunity. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's §1983 claim of unlawful seizure under the Fourth Amendment is denied.

The Court grants Defendant's Motion for Summary Judgment on Plaintiff's §1983 claim of unlawful seizure in violation of decedent's Fourteenth Amendment rights under the United States Constitution. Plaintiff has not opposed this issue, but even if she did, the United States Supreme Court has expressly held Court's must analyze such a claim only under the Fourth Amendment.

> Today we make explicit what was implicit in *Garner* 's analysis, and hold that *all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other "seizure of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham v. Connor,* 490 U.S. 386, 395 (1989).

Therefore, for the foregoing reasons, the Court denies Defendant Delvecchio's Motion

for Summary Judgment on Plaintiff's Fourth Amendment claim and grants Delvecchio Summary Judgment on Plaintiff's Fourteenth Amendment claim.  The Court denies, at this time, Defendant's Motion for Summary Judgment on Plaintiff's state law claims, as the Court allowed limited discovery on Defendant's qualified immunity argument.  Defendant may revisit these issues after full discovery has been completed.  Finally, the Defendant has asked the Court to hold in abeyance this ruling until it has had an opportunity to depose the Plaintiff's affiants.  The Court notes there is no motion before it on this issue, rather, Defendant has requested such relief in its Opposition to Motion for Leave to File Supplemental Affidavits.  The Court denies this request but may allow Defendant to revisit this issue if subsequent deposition testimony warrants a reexamination.

        IT IS SO ORDERED.


        S/Christopher A. Boyko
        CHRISTOPHER A. BOYKO
        United States District Judge


February 4, 2009